NOT FOR PUBLICATION                                                                                      CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HENRY JAARSMA o/b/o KATHERINE JAARSMA, | Hon. Faith S. Hochberg, U.S.D.J. |
|  | Civil Case No. 12-5952 (FSH) |
| Plaintiff, |  |
|  | **OPINION & ORDER** |
| v. |  |
|  | Date: January 16, 2015 |
| ACTING COMMISSIONER OF SOCIAL SECURITY, |  |
| Defendant. |  |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

### I.   BACKGROUND

a. **Vocational Background**

Plaintiff Katherine Jaarsma was born on August 17, 1973. At the time of the hearing before the ALJ on March 2, 2010, she was 36 years old. Jaarsma had a high school education and completed a three-month course in hotel management at Southeastern Academy. Plaintiff previously worked as a hotel receptionist from 1992 through 2004, but had not worked since February 15, 2004.

b.  **Relevant Medical Conditions**

Plaintiff claims that she has been disabled since February 15, 2004 due to various alleged ailments, including hypertension, arthritis and joint pain, MRSA, depression, fibromyalgia, endometriosis, kidney stones, nerve damage, degenerative disc disease, and depression, among others. Although it is uncontested that Plaintiff reported numerous psychological and physical ailments and was frequently hospitalized, the parties dispute the severity of these alleged conditions and their impact upon Plaintiff's functioning.

Regarding Plaintiff's physical pain, Plaintiff alleged back, neck, pelvic, knee and hip pain. She reported severe pain from a lumbar herniated disc, and received steroid treatments and pain medicine in 2005. Starting in 2006, she began treatment for tenderness and joint pain related to fibromyalgia and has been hospitalized multiple times for abdominal pain. Plaintiff was treated on October 2, 2007 for a knee injury received while exiting a van; she was placed in a knee immobilizer through March 2008, and received various pain medications and injections. In 2008, she fractured her hip. In 2010, an MRI revealed microfractures in her left knee. She has had several hip and knee surgeries.

Plaintiff was diagnosed with a Methicillin-resistant Staphylococcus aureus (MRSA) infection on three occasions. Plaintiff's physician noted that the 2006 episode MRSA was treated "with resolution." (Tr. 902-903). Two years later, in June 2008, she again tested positive for the MRSA bacteria, and the doctor placed her on medication and recommended surveillance blood cultures and other follow-up procedures. On October 3, 2008, her treating physician found no active infection (Tr. 908). On January 2009 Plaintiff again tested positive for MRSA.

Plaintiff alleges various possible psychiatric issues including depression, bipolar disorder, and/or obsessive compulsive disorder. She reported lack of concentration, difficulty focusing, and difficulty remembering events. In 2004, Jaarsma was hospitalized during a "nervous breakdown." After experiencing seizures, she had a CAT scan in 2009 at Valley Hospital. She received psychiatric treatment at Ramapo Ridge Psychiatric Hospital/Christian Health Care Center for psychiatric illnesses between 2004 and 2009. She was partially hospitalized on two occasions, the first on January 29, 2007 and the second from September 23, 2009 to October 14, 2009. Treating physicians noted agitation, problems with sleep, tearfulness, depression, insomnia, suicidal thoughts, poor impulse control, and limited judgment and insight.

### c.  Effect of Medical Conditions on Plaintiff's Functioning

Chiropractor Carmen J. Occhiuzzi, who examined Jaarsma on June 25, 2007, noted pain and tenderness at several levels of the spine and muscle tightness. He opined Jaarsma could lift and carry up to fifteen pounds, stand and/or walk up to six hours a day, sit up to six hours per day, and perform limited pushing and/or pulling. The ALJ noted that, as of February 2010, though Plaintiff still complained of physical pain, Dr. Occhiuzzi saw no deterioration in her condition and imposed no further limitations.

Similarly, Dr. Raymond Briski, a State agency reviewer, assessed Plaintiff in September 2008. Dr. Briski found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk about six hours per eight hour workday, sit for about six hours per eight hour workday, and was not limited regarding her ability to push and pull or use hand or foot controls. (Tr. 770). He noted her normal gait and that Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds, could occasionally kneel, stoop, crouch, and crawl, and could frequently balance. (Tr. 771). She had no manipulative limitations, no visual limitations, no

communicative limitations, and no environmental limitations. (Tr. 772-773). He concluded that, because she could walk a half-mile at a time, and had no neurologic deficits or gait/manipulation abnormalities on her physical exam, she could perform the work indicated on the RFC assessment. (Tr. 774).

Plaintiff was also examined by internal medicine consultative examiner Dr. Alexander Hoffman, who described Plaintiff as walking with a "normal gait" and having no issues getting on or off the examination table or "arising from a supine position." (Tr. 765). Plaintiff could raise her right knee about forty to forty-five degrees and raise her left knee about fifty to fifty-five degrees. Her upper body strength was good, with normal biceps and triceps strength, and relatively good extension of both arms. He also notes that she has good range of motion in all joints. There were no significant abnormalities.

A 2004 Ramapo Ridge psychiatric assessment indicated depression and poor insight and Major Depression. She was prescribed Seroquel, Prozac, and Neurontin. She experienced paranoid thoughts and anxiety.

A 2008 Ramapo Ridge evaluation by Psychiatrist Solomon Miskin indicated that Plaintiff repeatedly exhibited being "oriented to all three spheres," having "intact memory, no evidence of any thought disorder, and no evidence of hallucinations or delusions." (Tr. 41). In a May 20, 2009, evaluation, Dr. Miskin noted that Plaintiff was alert and oriented in all spheres, cooperative, coherent and compliant. She had "good" comprehension, "appropriate" affect, "clear" sensorium, and had no overt evidence of a thought disorder. (Tr. 574). His diagnostic impression of Plaintiff was that she had "[b]ipolar disorder, chronic, mixed; without psychotic features." (*Id.*). He also noted that she could manage her own funds.

## II. THE DISABILITY STANDARD AND THE ALJ'S DECISION

### a. The Statutory Standard for a Finding of Disability

A person is technically disabled under the Social Security Act ("SSA") if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A person will be considered disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Finally, the SSA defines work that exists in the national economy as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

In determining disability claims, the commissioner applies a five-step procedure according to 20 C.F.R. §§ 404.1520, 416.920 and *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999). The steps are explained as follows:

<u>Step One: Substantial Gainful Activity</u>

The Commissioner first looks to a claimant's current employment situation and considers whether such employment constitutes substantial gainful activity. Substantial here means the

employment requires "significant physical [or] mental activities." 20 C.F.R. § 416.972. Further, even part-time or inconsistent work can still be considered substantial. *Id.* Gainful work is "work activity that you do for pay or profit." *Id.* If the claimant is currently engaged in substantial gainful activity, he or she will not be found disabled and consideration of any medical condition is unnecessary. 20 C.F.R. § 416.920(b).

Step Two: Severe Impairment

If the claimant is not engaged in substantial gainful activity, he or she must then demonstrate the existence of a severe impairment. A "severe impairment" is an impairment "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities." 20 C.F.R. § 416.920(c). If the claimant is unable to present a severe impairment, or combination of impairments considered severe, he or she will not be found disabled. *Id.*

Step Three: Listed Impairment

If the claimant is able to demonstrate a severe impairment, the Commissioner next determines if the impairment meets or equals an impairment listed on the Listing of Impairments in 20 C.F.R. § 404, subpt. P, app. 1. If the claimant has such an impairment, he or she is found disabled. If not, the Commissioner proceeds to the fourth step. 20 C.F.R. § 416.920(d).

Step Four: Residual Functioning Capacity (RFC)

In the fourth step, the Commissioner decides whether, despite his or her impairment, the claimant still possesses the Residual Functioning Capacity[1] ("RFC") to perform his past relevant work. If so, the claimant is found not disabled and the inquiry is at an end. If not, the Commissioner then proceeds to the fifth step. 20 C.F.R. § 416.920(e)-(f).

---

[1] Residual Functioning Capacity is the claimant's ability to work on a sustained basis despite his physical or mental limitations. The RFC determination is not a decision as to whether a claimant is disabled, but it is used as the basis for determining the particular types of work a claimant may be able to perform despite his or her impairment(s). *See* 20 C.F.R. § 416.945.

Step Five: Other Work

If the claimant is unable to perform his or her past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he or she is able to make an adjustment to other work. If he or she cannot perform other work, the claimant is found disabled. 20 C.F.R. § 416.920(g).

This five-step analysis has a shifting burden of proof. *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). For the first four steps, the claimant bears the burden of persuasion. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the analysis reaches the fifth step, however, the Commissioner then bears the burden of proving that the claimant is able to perform other work that is available in the national economy. *Id.* at 142. "The claimant is entitled to disability benefits only if he is not able to perform other work." *Id.* (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

**b. The ALJ's Decision**

Upon review of the entire record, the Administrative Law Judge, James Andres, proceeded through the five-step analysis. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date on February 15, 2004. At step two, the ALJ determined that Plaintiff suffered from multiple severe impairments: "hypertension; arthritis, and depression." (Tr. 37). The ALJ concluded at this step that fibromyalgia was not medically established, because, "in the absence of medical signs and findings, the report indicates that there are no reproducible multiple trigger points which are necessary to establish a medically determinable diagnosis of fibromyalgia." (*Id.*). At step three, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet or equal any of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1.

At step four, the ALJ discussed the expert opinions regarding Plaintiff's limitations, including: Dr. Occhiuzzi's evaluation that Plaintiff could lift up to 15 pounds; that her ability to use foot controls would be limited due to her knee and hip surgery; findings of pain and tenderness in the cervical and lumbar regions, muscle tightness in all areas and decreased range of motion in the right knee; Dr. Hoffman's finding that examination did not reveal any significant abnormalities and that she walked with a normal gait and used no assistive devices; and Dr. Miskin's opinion that Plaintiff could concentrate within normal limits and showed good comprehension. The ALJ determined Plaintiff's RFC: "claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except due to her mental impairment, she is limited to simple, unskilled work." He found that Plaintiff "is unable to perform any past relevant work." (Tr. 42).

At step five, the ALJ considered the Plaintiff's age, education, work experience, RFC, and the Medical-Vocational Guidelines in Appendix 2 to Subpart P of Part 404 (the "grid"). A vocational expert did not testify. The ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 42) (citing 20 C.F.R. § 416.969). As a result, the ALJ found the Plaintiff "has not been under a disability, as defined in the Social Security Act." (*Id.* at 43).

### III.    STANDARD OF REVIEW

This Court must review the ALJ's factual findings to determine whether the administrative record contains substantial evidence for such findings. 42 U.S.C.A. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate."

*Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. *Simmons v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it." *Snee v. Sec. of Health and Human Servs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

## IV.   DISCUSSION

Plaintiff contests the ALJ's use of the Medical-Vocational Guidelines despite the ALJ's finding of nonexertional limitations in the Psychiatric Review Technique Form.  At step five, the Commissioner must prove that the claimant is able to perform other work that is available in the national economy.  As evidence of suitable jobs in the national economy, the ALJ may rely solely on the Medical-Vocational Guidelines, but only in the absence of nonexertional limitations. 20 C.F.R.§ 404.1569a(c)(1), (2). Where a claimant has both exertional and nonexertional limitations, an ALJ may not use the grid to determine whether the claimant is disabled without taking additional evidence. *Sykes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000). Nonexertional limitations are "symptoms . . . [that] affect only your ability to meet the demands of jobs other than the strength demands." 20 C.F.R.§ 404.1569a(c)(2). This includes "difficulty maintaining attention or concentrating." 20 C.F.R.§ 404.1569a(c)(1)(ii).

9

At steps two and three, the ALJ summarized Plaintiff's limitations using the PRT, making a finding that Plaintiff had "moderate difficulties" with regard to "concentration, persistence, or pace." (Tr. 38). He also found claimant's depression "causes significant vocational limitations in her ability to perform work-related activities and [is] therefore severe." At step four, the ALJ determined the Plaintiff's "mental impairment has had no greater impact than to limit her to performing simple tasks not involving high-stress situations." Thus, he concluded her RFC was limited to "light work . . . except due to her mental impairment, she is limited to simple, unskilled work." At each of these steps, the ALJ recognized moderate or severe nonexertional limitations: her mental impairments limited her ability to work. *See Brown v. Bowen*, 845 F.2d 1211, 1214 (3d Cir. 1988) ("Nonexertional limitations, . . . include both mental impairments, and others, such as sensory impairments, epilepsy, and postural and manipulative limitations.") (internal citations omitted); 20 C.F.R.§ 404.1569a(c)(1)(ii) (difficulty concentrating); 20 C.F.R.§ 404.1569a(c)(1)(i) (depression).[2]  Although noting these nonexertional limitations, the ALJ concluded that "the additional limitations have little or no effect on the occupational base of unskilled light work." (Tr. 43). The ALJ then relied solely on the grid to determine that Plaintiff was not disabled. No vocational expert testified regarding the existence of jobs suitable to a person with the identified exertional and nonexertional limitations.

The ALJ's recognition of nonexertional limitations in the PFT and RFC required relying on additional evidence, rather than exclusive use of the grid. *Diaz v. Comm'r of Soc. Sec.*, Civ. No. 10-392, 2010 WL 5288206, at *1, n.1 (D.N.J. Dec. 15, 2010) (remanding where ALJ found

---

[2] Although the ALJ found "moderate limitations in concentration, persistence, and pace" using the PRT, the ALJ later stated there was "no evidence of significant deficiencies of concentration, persistence, or pace." Regardless of whether limitations in her ability to concentrate were significant or moderate, the ALJ found that multiple nonexertional limitations affected Plaintiff's ability to work. Exclusive reliance on the grid was, therefore, inappropriate. *Sykes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000).

10

moderate deficiencies in concentration, persistence, and pace but relied solely on Medical-Vocational Guidelines without expert vocational testimony); *Russell v. Astrue*, Civ. No. 10-761, 2011 WL 4473230, at *2, *5 (W.D. Pa. Sept. 26, 2011) ("[T]he ALJ's finding at step 3 . . . [of] 'moderate difficulty maintaining concentration, persistence or pace' constitutes a non-exertional limitation which precludes the use of the Grids to dictate a finding of not disabled and requires advisory testimony from a vocational expert, or similar evidence, to aid in the determination of whether other jobs exist which plaintiff can perform."); *Van Winkle v. Barnhart*, 55 F. App'x 784, 787 (8th Cir. 2003) (remanding where SSA psychologists noted difficulties in concentration, persistence, or pace on PRFT but ALJ relied solely on the grid).  Here, the ALJ noted multiple nonexertional limitations but concluded that "the additional limitations have little or no effect on the occupational base of unskilled light work" without relying on the testimony of a vocational expert or a specific SSR.[3] *Sykes*, 228 F.3d at 261 ([T]he Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without [] taking additional vocational evidence."); *Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 216 (3d Cir.2007) ("The ALJ's use of the grids despite the presence of nonexertional impairments is directly contrary to our holding in *Sykes*.").[4]  Accordingly, the Court remands this case to the Commissioner to

---

[3] The ALJ did not cite an SSR in determining that Plaintiff's additional limitations had "little or no effect on the occupational base." Nor does the Commissioner contend that it relied on an SSR and gave prior administrative notice to Plaintiff of such reliance. *See* AR 01-1(3).

[4] The cases cited by the Commissioner govern the sufficiency of hypothetical questions to vocational experts. *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) (finding hypothetical question that included limitation "routine task" may be sufficient to convey difficulties with concentration, persistence or pace); *Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008) (finding "unskilled work" reflects moderate difficulties in concentration or pace because such work typically "does not require maintaining sustained concentration."). They do not bear on whether the grid may be used for nonexertional limitations, particularly where no hypothetical question was ever posed to a vocational expert.

11

provide the ALJ an opportunity to develop the record with testimony or other evidence regarding whether Plaintiff's nonexertional impairments eroded her occupational base.

Additionally, on remand, the ALJ should consider Plaintiff's later-acquired evidence of fibromyalgia. In his opinion, the ALJ discussed the available evidence regarding Plaintiff's purported fibromyalgia. Reviewing the medical records, he found that "[f]ibromyalgia is not medically established" because "[t]he requisite trigger points of 11 of 18 are not described in the medical and examining sources we have in the file." (Tr. 37). Months after the ALJ issued his May 2010 opinion, Plaintiff submitted a report by Rheumatologist Dr. Evan Liebowitz, from February 7, 2011. Dr. Liebowitz opined that Plaintiff had all 18/18 trigger points for fibromyalgia. (Tr. 1474-77). Some of his opinions conflict with other medical evidence in the record. (Tr. 1476 (stating patient can never lift more than 10 pounds)). If the ALJ finds that this evidence "relate[s] to the time period for which the benefits were denied, . . . [rather than] a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition," then it should be considered in determining whether Plaintiff has a severe impairment and the effect on Plaintiff's residual functioning capacity. *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984).

## V.   CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, **IT IS**, this 16th day of January, 2015, hereby

**ORDERED** that Plaintiff's appeal is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision in this matter is **VACATED** and this case is

**REMANDED** to the Commissioner for further proceedings in accordance with this Order.


                                        **s/ Faith S. Hochberg**
                                        **Hon. Faith S. Hochberg, U.S.D.J.**